UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| VILMA GRECO, | ) | No. CV 05-06642-VBK |
| Plaintiff, | ) ) | MEMORANDUM OPINION, AND ORDER THEREON |
| v. | ) ) | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

Plaintiff Vilma Greco ("Plaintiff"), by and through her counsel, filed this action pursuant to 42 U.S.C. §405(g), seeking review of the denial of the Commissioner of Social Security ("Commissioner") of her application for Supplemental Security Income ("SSI") under the provisions of Title XVI of the Social Security Act ("Act").

Plaintiff filed her Complaint on September 15, 2005, seeking review of the Commissioner's denial of her application for Social Security Disability Benefits. The parties filed a Consent to Proceed before the undersigned Magistrate Judge on October 3, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation ("JS") on June, 13, 2006, that addresses their positions concerning the disputed

issues in the case. The court has taken the Joint Stipulation under submission without oral argument.

# I
## **BACKGROUND**

Plaintiff was born on March 13, 1959. (Administrative Record ("AR") 43). She has a high school education and no past relevant work experience. (AR 22-23).

Plaintiff filed her application for SSI on September 4, 2003. (AR 43-47). Plaintiff's application was denied administratively (AR 32-35) and presumably, on reconsideration, although the administrative decision is not part of the record. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ")(AR 36), which was held in Pasadena, California on September 24, 2004. (AR 178-212). At that hearing, Plaintiff was represented by counsel (the same counsel who represents her in this action), and testified. In addition, testimony was taken from Rheta B. King, a vocational expert ("VE"). A follow-up hearing was held before the same ALJ, in Pasadena, California on March 10, 2005. Plaintiff was represented by the same counsel, and she testified again. In addition, testimony was taken from Elizabeth Ramos-Brown, a vocational expert ("VE"). An unfavorable decision was issued by the ALJ on April 6, 2005 (AR 14-23). Plaintiff's counsel requested review by the Appeals Council (AR 9-11), and submitted additional documentation, including a mental assessment from Plaintiff's treating therapist at Verdugo Mental Health Center (176-177), and additional notes. (AR 9-11).

The Appeals Council denied review (AR 4-6), thus rendering the ALJ's decision the final decision of the Commissioner. Plaintiff then

requested this judicial review under 42 U.S.C. §405(g).

In the Joint Stipulation, Plaintiff raises the following issues:

1. The ALJ failed in his duty to fully develop the record regarding Plaintiff's mental impairment;
2. The ALJ failed to properly evaluate the impact of Plaintiff's migraines on her ability to work;
3. The ALJ erred in applying medical-vocational rules to reach a finding of "not disabled";
4. The ALJ erred in his credibility findings.

**II**

**DISCUSSION**

The Court, pursuant to 42 U.S.C. §405(g), has the authority to review the Commissioner's decision denying Plaintiff's disability benefits to determine whether her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

A claimant is "disabled" for the purpose of receiving benefits under the Social Security Act if he is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A); 20 CFR §§404.1505(a), 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

3

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. §§404.1520, 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§404.1520(b), 416.920(b). If the claimant is not currently engaged in substantial gainful activity, in the **Second Step**, the ALJ must determine whether the claimant has a severe impairment or combination of impairments significantly limiting him from performing basic work activities; if not, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§404.1520(c), (416.920(c)). If the claimant has a severe impairment, in the **Third Step**, the ALJ must compare the impairment to those impairments in the Listing of Impairments ("Listing"), 20 C.F.R. §404, Subpart P, App. 1; if the impairment meets or equals an impairment in the Listing, disability is conclusively presumed and benefits are awarded. 20 C.F.R. §404.1520(d), 416.920(d). When the claimant's impairment does not meet or equal an impairment in the Listing, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. §§404.1520(e), 416.920(e). When the claimant shows an inability to perform past relevant work, a <u>prima</u> <u>facie</u> case of disability is established and, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§404.1520(f), 416.920(f).

Following this sequential evaluation process, at Step One, the

ALJ determined that Plaintiff has not engaged in substantial gainful activity since September 18, 2002, the alleged onset of disability. (AR 22, Finding 1.)  At Step Two, the ALJ found that Plaintiff has severe impairments consisting of migraine headaches, discogenic disk disease of the lumbosacral spine, and depression (id., Finding 2), but at Step Three, found that these impairments do not meet or equal a Listing. (Id., Finding 3).  Following an assessment of Plaintiff's residual functional capacity ("RFC"), the ALJ found that Plaintiff is limited to simple work and has no past relevant work. (Id., Findings 5 and 6).  At Step Five, the ALJ identified other work which Plaintiff can perform (AR 23, Finding 9), thus determining that Plaintiff is not under a disability. (Id., Finding 10).

**III**

**THE ALJ FAILED IN HIS DUTY TO PROPERLY EVALUATE AND DEVELOP THE RECORD REGARDING PLAINTIFF'S MENTAL IMPAIRMENT**

Plaintiff's argument is twofold: first, that the ALJ did not adequately consider  evidence in the record suggesting a mental impairment more severe than what he found. (See Joint Stip at 4-7). Plaintiff principally asserts that the ALJ disregarded the evidence of major depression, anxiety, and post-traumatic stress disorder ("PSTD") diagnosed by a number of Plaintiff's treating physicians.  Id.

Second, Plaintiff contends that the ALJ neglected to develop the record by failing to obtain a psychiatric or psychological consultative examination in order to assess the effects of Plaintiff's mental impairment on her ability to function in the workplace. Id.

Defendant alleges that the ALJ sufficiently considered Plaintiff's mental impairment in determining whether she was disabled

and fully and fairly developed the record. (See JS at 7). According to defendant, the ALJ properly relied upon the opinion of consulting psychiatrist Dr. Hernandez in evaluating the effect of Plaintiff's depression on her functional abilities. Id. With regard to Plaintiff's second allegation, defendant argues that because "the ALJ did not note any lack of information or ambiguity in the record concerning these alleged mental impairments," (See JS at 9) he was under no duty to order a consultative examination. Id.

### A. Applicable Law.

In evaluating psychiatric impairments, 20 C.F.R. §404.1520a(e)(1) and §416.920a(e)(1) mandate that consideration be given, among other things, to activities of daily living ("ADLs"), social functioning; concentration, persistence, or pace; and episodes of decompensation. These factors are generally analyzed in a Psychiatric Review Technique Form ("PRTF"). The PRTF is used at Step Three of the sequential evaluation to determine if a claimant is disabled under the Listing of Impairments; however, the same data must be considered at subsequent steps unless the mental impairment is found to be not severe at Step Two. See SSR 85-16.

20 C.F.R. §§404.1520a(c)(1) and 416.920a(c)(1) require consideration of "all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment."[1]

---

[1] 20 C.F.R. §404.1545(c) and §416.945(c) also require consideration of "residual functional capacity for work activity on a

SSR 85-16 suggests the following as relevant evidence:

> "History, findings, and observations from medical sources (including psychological test results), regarding the presence, frequency, and intensity of hallucinations, delusions or paranoid tendencies; depression or elation; confusion or disorientation; conversion symptoms or phobias; psycho-physiological symptoms, withdrawn or bizarre behavior; anxiety or tension. Reports of the individual's activities of daily living and work activity, as well as testimony of third parties about the individual's performance and behavior. Reports from workshops, group homes, or similar assistive entities."

It is also required under §404.1520a(c)(2) and §416.920a(c)(2) that the ALJ must consider the extent to which the mental impairment interferes with an "ability to function independently, appropriately, effectively, and on a sustained basis" including "such factors as the quality and level of [] overall functional performance, any episodic limitations [and] the amount of supervision or assistance [] require[d]."

In 20 C.F.R. §404.1520a(c)(3) and §416.920a(c)(3), four broad functional areas are identified by which to rate the degree of functional limitation. These are ADLs; social functioning; concentration, persistence or pace; and episodes of decompensation.

---

regular and continuing basis" and a "limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting."

7

Pursuant to the September 2000 amendments to the regulations which modify 20 C.F.R. §404.1520a(e)(2) and §416.920a(e)(2), the ALJ is no longer required to complete and attach a PRTF.  The revised regulations provide categories for the first three of these four functional areas.  These categories are None, Mild, Moderate, Marked, and Extreme. (§404.1520a(c)(4)). In the decision, the ALJ must incorporate pertinent findings and conclusions based on the PRTF technique. §404.1520a(c)(2) mandates that the ALJ's decision must show "the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in ¶ (c) of the section."

The Ninth Circuit has routinely reaffirmed the principle that the ALJ has an independent duty to investigate all issues and to fully and fairly develop the record to assure that the claimant's interests are considered. Tonyapetan v. Halter, 242 F.3d 1150 (9th Cir. 2001)(citing Smolen v. Chater, 80 F.3d at 1288 (9th Cir.2001).  This duty is heightened in cases involbing mental impairments. Id., DeLorme v. Sullivan, 924 F.2d 841, 844 (9th Cir. 1991).

**B. Analysis**.

Here, the ALJ did not determine the full extent of Plaintiff's mental impairment and its effect on her functional capabilities. The body of evidence in Plaintiff's medical record includes numerous diagnoses of "major depression," "anxiety," "panic attacks," and "PTSD", offered by several treating physicians for in excess of two

8

years. (This is well over the twelve month period required by statute. See 42 U.S.C. §423 (d)(1)(a)). (See Dr. Valencia (AR 92, 96, 103, 105), Dr. Zuniga (AR 94, 98), Dr. Pacheco (AR 85, 86, 87), and Dr. Janoian (AR 164, 166, 168)).

In his decision, the ALJ found that although Plaintiff has "major depression," she can still perform "simple work.[2]" (AR 21). The only evidence the ALJ identified with regard to the effect of Plaintiff's mental impairments on her functional abilities was a PRTF. The PRTF described the Plaintiff's mental impairment as causing only mild restrictions in activities of daily living and social functioning. (AR 21). The ALJ's decision fails to even mention the areas of concentration, persistence, pace, or episodes of decompensation.

In addressing Plaintiff's mental condition, the ALJ primarily relied on a psychiatric consultation by Dr. Hernandez, who saw Plaintiff only once on February 7, 2003 and provided a brief, cursory assessment. (AR 166[3]). His notes were based on Plaintiff's "appearance," and "mood" and from this he determined that Plaintiff's major depressive disorder was "mild to moderate." (AR 117). It is apparent that Dr. Hernandez performed no objective testing, and his consultative report can in no manner substitute for a consultative examination. Consequently, it was error for the ALJ to rely on Dr.

---

[2]   "Simple work" is another term for "unskilled work," and refers to Social Security Ruling 85-15 which states that the basic demands of unskilled work are defined as understanding, remembering, and carrying out simple instructions; responding appropriately to supervision, co-workers, and usual work situations; dealing with changes in a routine work setting; and making judgments that are commensurate with the functions of unskilled work, i.e. simple work-related decisions.

[3]   Dr. Hernandez interviewed Plaintiff on February 7, 2003 at the request of one of Plaintiff's treating physicians, Dr. Samaniego.

Hernandez's report to assess Plaintiff's functional capacity.

In evaluating the opinions of various doctors, "the greatest weight is afforded to a treating physicians's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). "Even if the treating physician's opinion is contradicted by another doctor, the ALJ may not reject his opinion without providing specific, legitimate reasons, supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830 (9th Cir, 1995)(citing Murray v. Heckler, 722 F.2d 499,502 (9th Cir. 1983)).

While relying on Dr. Hernandez' report as support for his assessment of Plaintiff's mental condition, the ALJ failed to address the fact that her treating physicians repeatedly diagnosed depression, anxiety, and PTSD more severe than "mild to moderate." (AR 85, 86, 87, 92, 94, 96, 98, 103, 105, 164, 166, 168).

Moreover, at the September 24, 2004 hearing, Plaintiff's attorney requested that the ALJ order a psychiatric or psychological consultative examination to assess Plaintiff's limitations in mental functioning.(AR 211). As Plaintiff notes, instead of ordering a *mental* consultative examination, the ALJ ordered a *neurological* examination, which failed to address Plaintiff's mental impairment. (See JS at 6)(AR 156-159). As held in Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001), it is an ALJ's duty to develop the record further when the record is inadequate to allow for proper evaluation of the evidence. (See SSR 85-16). One such method the ALJ can employ is to order a consultative examination which "is often required for proper resolution of a disability claim." Reed v. Massanari, 270 F.3d 838,

839 (9th Cir. 2001)(quoting Hawkins v. Chater, 113 F.3d 1162. 1166 (10th Cir. 1997). Here, by ordering an inappropriate consultative examination, the ALJ failed in his duty to develop the record regarding Plaintiff's mental impairment.

Finally, the Commissioner failed to even acknowledge a material medical report completed by Plaintiff's treating therapist, Dr. Jane Mackie, at Verdugo Mental Health Center, timely submitted to the Appeals Council. (AR 7-8). In evaluating Plaintiff's ability to do work-related activities, Dr. Mackie assessed the following limitations: marked restrictions for carrying out short, simple instructions; marked restrictions for understanding, remembering, and carrying out detailed instructions; and an extreme restriction for making judgments on simple work-related decisions. (AR 176). In sum, Dr. Mackie concluded that Plaintiff is "unable to work, to obtain stable housing, medications, food, et al" id, which would seem to directly contradict the ALJ's determination that Plaintiff is capable of "simple work."

Under sentence six of 42 U.S.C. §405(g), the court can remand a case to the Commissioner and order the consideration of additional evidence if the plaintiff establishes "that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."

Plaintiff's fourth issue, that the ALJ erred in applying medical-vocational rules to reach a finding of "not disabled," is also dependent upon an adequate analysis of her mental functioning. In evaluating whether Plaintiff was capable of working, the ALJ applied Medical-Vocational Rule 203.28 which rendered a finding of "not disabled." (AR 21-22). The ALJ then brought in a Vocational Expert

11

("VE") who, given a hypothetical profile, testified that Plaintiff was able to perform a number of "medium exertional level, unskilled occupations."[4] Id. However, because the ALJ's findings did not adequately incorporate and address the four areas of mental functioning (ADLs; social functioning; concentration, persistence, or pace; and episodes of decompensation), the hypothetical was incomplete. On remand, the evaluation of Plaintiff's mental impairment should incorporate her limitations in the areas set forth in 20 C.F.R. §404.1520a(e)(1).

## IV

## **THE ALJ ERRED IN HIS CREDIBILITY FINDINGS**

The ALJ rejected Plaintiff's credibility on three grounds: her alleged "drug-seeking behavior;" the fact that no doctor referred her to a mental health specialist, nor did she seek treatment on her own; and the "failure to keep her medical appointment with the consultative examiner." (AR 19-20).

Plaintiff argues that all of these reasons are unfounded. With regard to the "drug-seeking" allegation, Plaintiff contends that there was no substantial evidence in the record showing that she sought any drugs other than prescribed pain medications and for any reason other than to alleviate severe migraines. (See JS at 24). Plaintiff also alleges that she had legitimate excuses for both failing to obtain

---

[4] If the ALJ concludes that plaintiff cannot perform any of her past relevant work, the burden shifts to the Commissioner to determine that in light of plaintiff's limitations, a significant number of jobs in the national economy exist that plaintiff could still perform. Tackett v. Apfel, 180 F.3d 1094, 1100-01 (9th Cir. 1999). To demonstrate this, the ALJ can employ two methods: the testimony of a vocational expert, and/or the application of the Medical Vocational Guidelines at 20 C.F.R. Part 404, Subpart 4, Appendix 2.

1 mental health treatment and failing to attend her medical appointment
2 for a consultative examination. Id.
3    Defendant maintains that "suspected drug-seeking behavior,"
4 failure to seek mental health treatment, and failure to keep a medical
5 appointment for a consultative examination are all valid reasons for
6 finding that the She was not credible. (See JS at 23).

   **A.   Analysis**.

   In order to make a determination of disability, the ALJ must consider the claimant's subjective symptoms which in turn requires a finding of whether the claimant's own testimony and allegations are credible. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). The reasons for discounting subjective complaints must be supported by explicit findings. Id. In determining the issue of credibility, the ALJ may consider for example: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning her symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

   The ALJ's conclusion that Plaintiff was exaggerating her symptoms in order to procure more drugs, (namely Demerol), is not valid under any of these credibility considerations. The ALJ primarily based his conclusion on two medical reports completed when Plaintiff was admitted to White Memorial Medical Center on February 7, 2003 for the treatment of intractable migraines. (AR 110-115). Both doctors who examined her, attending physician Dr. Stephen Marer and consulting

13

physician Dr. Liu, reported that Plaintiff requested increasingly more Demerol for her migraine pain. Dr. Marer specifically stated that "the patient exhibited signs of drug seeking behavior" (AR 111) based on the fact that Plaintiff said that Demerol was the only medicine that could relieve her headache. Dr. Liu expressed some reservations regarding Demerol as a treatment, not because he doubted the severity of Plaintiff's symptoms, but because he believed steroids would prove more effective in treating severe migraines (AR 110-117). Moreover, Plaintiff's request and preference for Demerol was not unreasonable because her treating physicians had been prescribing it in order to treat her migraines for over two years. See Dr. Valencia (AR 92, 96, 103), Dr. Pacheco (AR 78, 79, 86, 102). By the time Plaintiff arrived at White Memorial Hospital in February, 2003, she was accustomed to using Demerol to ease her pain and thus it was understandable that she preferred it. The ALJ did not take this medical evidence into account when he drew the conclusion that she was "drug-seeking" and thus not credible.[5]

Plaintiff's failure to seek mental treatment is also not a valid credibility factor, nor is it correct that her physicians failed to refer her for mental treatment. Both the medical record and hearing testimony provide evidence that a number of Plaintiff's physicians did recommend counseling and that she did attempt to pursue it. The apparent reason she failed to obtain regular treatment or counseling was because she could not afford it. On December 12, 2002, Dr. Valencia "strongly encouraged counseling" (AR 103) but also noted on

---

[5] It is a possibility worth exploring that Plaintiff had become addicted to prescription pain medication. If that is a valid conclusion, then her addiction cannot be held against her with regard to an assessment of her credibility.

14

January 13, 2003 that Plaintiff "can not afford counseling." (AR 96). On February 13, 2003, Dr. Zuniga also noted "counseling too expensive." (AR 94).

Additionally, at both hearings, Plaintiff attempted to explain her inability to afford mental treatment, but the ALJ repeatedly interrupted her. For example, when the ALJ asked who was treating her for depression, Plaintiff partially responded "I couldn't afford," but the ALJ immediately interrupted, stating "No, just answer the question. Okay?" (AR 192).

As held by the Court in Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995), "a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment." Thus, the ALJ's reasoning for discrediting Plaintiff based on her failure to seek treatment on her own has no merit.

Finally, the ALJ's determination that Plaintiff's failure to attend a consultative examination reduces her credibility constitutes error. The consultation referred to was a neurological examination scheduled by the State Agency for October, 2003. (AR 77). The Commissioner's regulations state: "We will consider your physical, mental, educational, and linguistic limitations in determining whether a claimant had a good reason for failing to attend a consultative examination." 20 C.F.R. §§ 404.1518(a), 416.918(a). See Bousquet v. Apfel, 118 F.Supp.2d 1049, 1055 (C.D. Cal. 2000). "If a claimant has a good reason for failing to appear, we will schedule another examination." Id.

At the time of this consultation, Plaintiff suffered from a mental impairment and was homeless and living in a van. (AR 217, 218).

Under Bousquet, these obstacles qualify as valid explanations that the ALJ failed to consider. Id. Thus, the failure to attend the scheduled consultative examination is not a basis upon which to find that Plaintiff is not credible.

Plaintiff's second issue is that her migraines were not correctly evaluated. Although the ALJ found that Plaintiff's migraines constitute a "severe impairment" (AR 22, Finding 2), he concluded that she still retains the capacity to perform medium exertional level work and is limited to simple work. Id. In reaching this decision, the ALJ placed "greater reliance on the objective medical evidence" because he found that claimant was "not entirely credible." (AR 21). As previously discussed, the ALJ's grounds for discrediting Plaintiff's claims due to her alleged "drug seeking behavior" constitutes error, and, for that reason, undermine his determination concerning her migraines.

Moreover, the ALJ's determination that "claimant retains the residual functional capacity to perform medium exertional level work" (AR 21) does not account for the extent to which Plaintiff's migraines affect her non-exertional (non-strength) limitations. The ALJ relied on a neurological evaluation conducted by Dr. Farahdel on December 27, 2004. In his report, Dr. Farahdel noted that "this patient is capable of carrying and lifting 50 pounds occasionally and 25 pounds frequently. (AR 259). This assessment only addresses exertional limitations. The record is devoid of any assessment regarding Plaintiff's non-exertional limitations. The ALJ's reliance on Dr. Farahdel's report is thus misplaced. On remand, the issue of Plaintiff's migraines will be re-evaluated with her non-exertional limitations taken into account.

**CONCLUSION**

In sum, the decision is deficient for numerous reasons. It fails to acknowledge significant information from Plaintiff's treating doctors as to her mental impairments; it fails to provide the type of analysis required by regulations (20 C.F.R. §404.1520a); it relies on a psychiatric consultation, rather than a comprehensive examination to assess Plaintiff's mental functional abilities; and finally, the ALJ failed in his obligation to develop the record by ordering a consultative examination. The credibility assessment is wholly deficient. On remand, in addition to obtaining a psychiatric consultative examination, consideration will be given to the full extent of information in the record concerning Plaintiff's mental functioning, including Dr. Mackie's assessment.

**ORDER**

**IT IS THEREFORE ORDERED** that (1) Plaintiff's request for remand is **GRANTED**; (2) the decision of the Commissioner is **REVERSED**; and (3) this action is remanded for further proceedings consistent with this Memorandum Opinion.

DATED: August 2, 2006

/s/
VICTOR B. KENTON
UNITED STATES MAGISTRATE JUDGE